John NIELSEN

v.

BURNHAM & MORRILL, INC., et al.

Supreme Judicial Court of Maine.

Argued Sept. 27, 1991.
Decided Dec. 31, 1991.

James J. MacAdam (orally), James G. Fongemie, McTeague, Higbee, Libner, MacAdam, Case & Watson, Topsham, for plaintiff.

James C. Hunt (orally), Robinson, Kriger, McCallum & Greene, P.A., Portland, for appellees.

Before McKUSICK, C.J., and ROBERTS, WATHEN, GLASSMAN, CLIFFORD and COLLINS, JJ.

CLIFFORD, Justice.

The employee, John Nielsen, appeals from a decision of the Appellate Division of the Workers' Compensation Commission (Appellate Division) affirming a decision of the Workers' Compensation Commission (Commission). Because the Commission did not err in including three weeks of paid vacation time in the number of weeks worked for purposes of determining Nielsen's average weekly wage pursuant to 39 M.R.S.A. § 2(2)(B) (1989), we affirm the Appellate Division.

In 1988, Nielsen sustained a gradual compensable injury while working for Burnham & Morrill, Inc., and he petitioned the Commission for compensation. To determine the compensation to which Nielsen

was entitled, the Commission calculated Nielsen's average weekly wage pursuant to 39 M.R.S.A. § 2(2)(B). In doing so, the Commission divided Nielsen's total compensation (less that received for the first week), including his vacation pay, by the total number of weeks he was employed (less the first week), including Nielsen's three weeks of paid vacation. Claiming the compensation awarded to him was insufficient because the average weekly wage was improperly calculated, Nielsen appealed to the Appellate Division. *See* 39 M.R.S.A. § 103–B (1989 & Supp.1990). The Appellate Division affirmed the Commission. We granted Nielsen's petition for appellate review. *See* 39 M.R.S.A. § 103–C (1989).

 Nielsen is entitled to compensation for his work-related injury that is based on his average weekly wage.[1] *See Warren v. H.T. Winters Co.*, 537 A.2d 583, 585 (Me.1988). The average weekly wage for an employee with a variable weekly wage is determined pursuant to 39 M.R.S.A. § 2(2)(B).[2] It provides that the average weekly wage is to be calculated by dividing the employee's total amount of compensation earned in the year preceding the injury by the "total number of weeks, any part of which the employee worked, during the same period." 39 M.R.S.A. § 2(2)(B).

 When dealing with vacation pay, the Commission construes the phrase "weeks worked" to mean "weeks employed." Me. Workers' Comp. Comm'n R. 16.8.[3] This means that in calculating the average weekly wage, the Commission includes the vacation pay in the total amount of compensation (that is divided by the total number of weeks worked), and includes the vacation *weeks* (even though the employee was not physically present to do any work) in the total number of weeks worked. Nielsen contends that the Commission's construction conflicts with the plain meaning of the statute and results in his receiving less compensation than he is entitled to. He argues that his vacation pay should be included in his total compensation but that the vacation weeks should not be included in his "weeks worked."[4] We are unpersuaded by Nielsen's contentions.

 An administrative agency's interpretation of a statute administered by it is entitled to great deference and will be upheld on appeal unless the statute plainly compels a different result. *Senty v. Board of Osteopathic Examination & Registration*, 594 A.2d 1068, 1072 (Me.1991). Neither the language nor the purpose of the statute requires us to vacate the Commission's decision. The word "worked" is commonly used to mean "employed." Moreover, the purpose of calculating an average weekly wage is to arrive at an estimate of the "employee's future earning capacity as fairly as possible." *Fowler v. First Nat'l Stores, Inc.*, 416 A.2d 1258, 1260 (Me.1980). The Commission's inter-

---

1. A totally incapacitated employee is compensated at a rate of two-thirds of his average weekly wage before the injury. *See* 39 M.R.S.A. § 54–B. If partially incapacitated, the employee is entitled to compensation of two-thirds of the difference between his average weekly wage before the injury and the wage he is able to earn while partially incapacitated after the injury. *See* 39 M.R.S.A. § 55–B.

2. 39 M.R.S.A. § 2(2)(B) (1989) provides in pertinent part:

> [T]he "average weekly wages, earnings or salary" shall be determined by dividing the entire amount of wages or salary earned ... by the injured employee during said immediately preceding year, by the total number of weeks, any part of which the employee worked, during the same period....

The quoted language dates back to and has survived unchanged since 1929. P.L. 1929, ch. 300, § 2.

3. Me. Workers' Comp. Comm'n R. 16.8 provides as follows:

> In computing the average weekly wage, vacation pay, bonuses, tips, etc. shall be included in the total amount of earnings for the period employed, divided by the number of weeks of *such employment*, including vacation periods, and not the number of weeks of *actual work*. (Emphasis added.)

4. Nielsen's total compensation for the year, including his vacation pay, was $21,000.48. If the total is divided by the forty-three weeks that he actually showed up and performed physical labor, his average weekly wage would be $31.86 higher than if divided by the forty-six weeks in which he was employed.

pretation fulfills this purpose. In contrast, the statute as interpreted by Nielsen, to include all wages but not include the entire period of employment in the calculation, results in an artificially inflated average weekly wage, greater than what Nielsen would have earned had he not been injured.[5]

The entry is:

Judgment affirmed.

All concurring.

---

**5.** Nielsen's additional argument based on *Ashby v. Rust Eng'g Co.,* 559 A.2d 774 (Me.1989), is without merit. *See Clark v. Rust Eng'g Co.,* 595 A.2d 416 (Me.1991); *see also* P.L.1991, ch. 615. §§ A–20, D–25.